# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No.  08-CR-110** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **LEE SLY,** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

## NOT FOR PUBLICATION[1]

Before the Court is Defendant Lee Sly, who previously pled guilty to distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2252A(a)(2)(A) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), a conviction with respect to which the Government and Sly did not reach a plea agreement.  The Court considers two issues with respect to Sly's sentence: the proper calculation of his sentence under the United States Sentencing Commission's Advisory Sentencing Guidelines ("Guidelines") and the appropriate sentence in light of all those considerations set forth in 18 U.S.C. § 3553(a) to determine the particular sentence that is appropriate in this case.  After considering both of these issues, for reasons more fully described below, the Court concludes that an appropriate sentence for Sly in light of the Guidelines and the factors outlined in 18 U.S.C. § 3553(a) is a term of imprisonment for 11 years and 3 months.

---

[1] This opinion primarily considers the same legal issues recently weighed by this Court in *United States v. Stern*, 590 F. Supp. 2d 945, 956 (N.D. Ohio 2008), accordingly, the Court does not recommend this for electronic or full-text publication.

## I.  BACKGROUND

On March 1, 2007, the Federal Bureau of Investigation ("FBI") obtained a search warrant for Sly's America Online e-mail account.  When the FBI reviewed that account, they found four image files of child pornography in the "read" folder, along with nine movie files and 178 images of child pornography in the "sent" folder.  One of these images involved a prepubescent minor engaged in bestiality.

On March 7, 2007, the FBI executed a search warrant at Sly's residence.  While reading the warrant, Sly stated, "I know why you're here.  You're here because of the bad pornography."  When the FBI analyzed Sly's computer, they discovered a total of approximately 428 image and 25 movie files of child pornography.  Approximately 278 images of child pornography were located in the "sent" folder of Sly's home computer.

## II.  GOVERNING LAW

### A.  The Three-Step Sentencing Procedure

Criminal sentencing is a three-step procedure.  *See United States v. Baird*, No. 8:07-CR-204, 2008 U.S. Dist. LEXIS 2338, at *10 14 (D. Neb. Jan. 11, 2008) (Bataillon, C.J.).   A district court must begin by calculating the sentence recommended by the United States Sentencing Commission. *Id*. at 10; *see also Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) ("[A sentencing court must] normally begin by considering the presentence report and its interpretation of the Guidelines.").  To make this calculation, a court determines both the classification of the crime for which the defendant has been convicted and the defendant's criminal history.  *See United States v. Boyd*, No. 3:07-CR-3, 2008 U.S. Dist. LEXIS 94565, at *43-48 (E.D. Tenn. Nov. 18, 2008).

Next, a sentencing court must determine whether the particular facts of the case justify a departure – either upward or downward – under the Guidelines themselves.  *Baird*, 2008 U.S. Dist. LEXIS 2338, at *12.  For example, a court may depart from the suggested Guidelines range upon

motion of the Government, in recognition of substantial assistance to the government, *see* U.S.S.G. 5K1.0, and the Guidelines instruct a court to consider "prior sentences not used in computing criminal history [and] prior similar adult criminal conduct not resulting in a criminal conviction," *Boyd*, 2008 U.S. Dist. LEXIS 94565, at *48-49 (citation omitted). *But cf. Baird*, 2008 U.S. Dist. LEXIS 2338, at *12 ("The PROTECT Act of 2003 eliminated judicial departures [in sexual exploitation cases] for all reasons except those specifically authorized in Chapter Five, Part K, of the Guidelines Manual." (citation omitted)). If a court finds that an adjustment is appropriate under the Guidelines, the court then recalculates the defendant's recommended sentence based on that adjustment. *See Boyd*, 2008 U.S. Dist. LEXIS 94565, at *54-59.

Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. *United States v. Ross*, 501 F.3d 851, 853 (7th Cir. 2007) ("[T]he presumption of reasonableness applicable when reviewing a within guidelines sentence on appeal does not carry over to the choice of sentence by the district court." (citing Rita, 127 S. Ct. at 2465)). A district court may "hear arguments by prosecution or defense that the Guidelines sentence should not apply." *Rita*, 127 S. Ct. at 2465. In this way, a "sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Id.* (citation omitted). Ultimately, however, a court must exercise its independent judgment in sentencing a defendant. *See id.*

### B.  The Sentencing Court's Discretion

Although a sentencing court must apply the above procedure rigorously, a court has considerable discretion when determining the proper sentence for a criminal defendant. *Gall v. United*

*States*, 128 S. Ct. 586, 595 (2007); *United States v. Prisel*, No. 07-3281, 2008 U.S. App. LEXIS 23648, at *28-30 (6th Cir. Nov. 13, 2008) (affirming a sentence indicating one week imprisonment for possession of child pornography); *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (per curiam) ("Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis."); *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("[D]istrict courts have considerable discretion in [sentencing] and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them.").  Although a court "must include the Guidelines range in the array of factors warranting consideration," *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007), there need not be "extraordinary circumstances to justify a sentence outside [that] range," *Gall*, 128 S. Ct. at 595.  *See Kimbrough*, 128 S. Ct. at 577 (Scalia, J., concurring) ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."); *see also United States v. Erpenbeck*, 532 F.3d 423, 445 (6th Cir. 2008) ("[A] district court's sentencing determination is reviewed under a deferential abuse of discretion standard." (citation omitted)).

Nevertheless, when sentencing a criminal defendant, a district court must "explain its reasoning to a sufficient degree to allow for meaningful appellate review."  *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008).  It must "set forth enough facts to [demonstrate] that it [has] considered the parties' arguments and had a reasoned basis for exercising its own legal decision making authority."  *United States v. Garrett*, 295 Fed. Appx. 778, 780 (6th Cir. 2008) (quoting *Vowell*, 516 F.3d at 510; *see also Vonner*, 516 F.3d at 393 (Martin, J., dissenting) ("I want to focus on the need for district courts to adequately explain the reasons for a given sentence . . . regardless of whether the sentence is above, below, or within the proposed guidelines range, so that we, as an appellate court, may adequately review [those] sentences.").

### III.    ANALYSIS

#### A.  Sly's Total Offense Level Under the Guidelines

The Court finds that Sly's base offense level under the Guidelines is 22.  *See* U.S.S.G. § 2G2.2. For reasons explained on the record of Sly's sentencing proceeding, the Court applies a two-level upward adjustment for an offense involving minors under 12 years of age, *see* U.S.S.G. § 2G2.2(b)(2), a five-level upward adjustment for distribution for value or expectation of value (but not for pecuniary gain), *see* U.S.S.G. § 2G2.2(b)(3)(B), a four-level upward adjustment for material that portrays sadistic conduct, *see* U.S.S.G. § 2G2(b)(4), a two-level increase for use of a computer, *see* U.S.S.G. § 2G2.2(b)(6), and a five-level upward adjustment based on the quantity of child pornography, *see* U.S.S.G. § 2G2.2(b)(7)(D).  Accordingly, Sly's adjusted offense level is 40.  The Court also finds that a full three-level adjustment for acceptance of responsibility, for which the Government moved, is warranted.  Consequently, the Court will apply a three-level downward adjustment.  *See* U.S.S.G. § 3E1.1(a) & (b).  Sly's total offense level is thus 37.

The Court further finds that Sly's criminal history category is I, resulting in an advisory range of imprisonment of between 210 and 262 months.

While the Government has agreed with this calculation, Sly has objected to two of the Court's upward adjustments.  First, Sly objects to the two-level increase for the use of a computer, *see* U.S.S.G. 2G2.2(b)(6), because the underlying offense includes or at least contemplates the possible use of a computer.  Sly argues that, as he pled guilty to the crime of distributing child pornography by any means (including use of a computer), it is "double-counting" to enhance for use of a computer. Although the Government attempts to analogize to crimes such as robbery (i.e., because it is reasonable to enhance for use of a gun during a robbery, it must also be reasonable to enhance for the use of a computer during distribution of child pornography), the Court finds Sly's position to be the more logical, in this case.  First, while a robbery can easily, and often does, occur without a gun, there

is rarely distribution without a computer in the current era.[2]  More fundamentally, however, a gun is a tool used to assist in a robbery (even without the gun, the elements of the crime of robbery can be met), whereas a computer is the means by which distribution is accomplished.  As defense counsel points out, moreover, in this particular case, all activity and distribution was via the computer.  Were this Court empowered to do so, then, it would find the enhancement to be impermissible double counting, in this case, because the underlying conduct for which Sly has plead guilty is the same conduct that justifies this enhancement under the Guidelines.

The problem for Sly, however, is that case law is uniformly against his position.  *See, e.g.*, *United States v. Miller*, No. 07-8096, 2009 U.S. App. LEXIS 6894, at * 1-2 (10th Cir. Apr. 1, 2009) ("The district court imposed a 2-level enhancement for the use of a computer in committing the offense and a 5-level  enhancement for distribution of child pornography for a thing of value. [Defendant] claims the application of the enhancements was impermissible double counting. He is wrong; we affirm."); *United States v. Carter*, 292 Fed. Appx. 16, 19 (11th Cir. 2008) ("The fact that [Defendant's] method of distribution involved a computer does not create impermissible double counting with the application of enhancements for both distributing child pornography to others and for using a computer in the commission of his production, possession, and distribution of that material."); *United States v. Santiago*, 204 Fed. Appx. 50, 53 (2d Cir. 2006) (per curiam) ("[W]e reject Santiago's contention that the application of an enhancement for using a computer to aid in the distribution and possession of child pornography, pursuant to section 2G2.2(b)(5) of the Sentencing Guidelines, amounted to impermissible double counting."); *United States v. Johnson*, No. 97-CR-206, 1999 U.S. Dist. LEXIS 8819, at *30 n.5 (N.D.N.Y June 3, 1999) ("One can traffic in child pornography without using a computer much like one could commit a robbery without the use of a

---

[2] Although the Government posits that it is hypothetically possible to distribute child pornography without a computer, presumably hand-to-hand or through the mail, the Court is aware of no such modern case.

6

gun."); *cf. United States v. Grossman*, 513 F.3d 592, 594 (6th Cir. 2008) ("After acknowledging that the probation department 'correctly' calculated the guidelines range, the sentencing judge noted that he was 'troubled' and 'shocked by the enhancements. In his view, the guidelines produced a calculation that was 'not fair.' . . . [he felt that the guidelines break] 'out an offense into very tiny increments that almost repeat one another.'"). The Court, accordingly, does not believe that it has the flexibility to sustain Sly's objection in light of the current law.[3]

Sly also objects to the application of a two-level enhancement for images depicting a minor under the age of 12, *see* U.S.S.G. § 2G2.2(b)(2), on the same grounds. Sly contends that the two-level enhancement for images depicting a minor under age 12 is double counting in light of the four-level enhancement for sadistic content, *see* U.S.S.G. § 2G2(b)(4), because the four-level enhancement is based upon the penetration of a prepubescent minor, *see US v. Diaz*, 368 F.3d 991 (8th Cir. 2004) (explaining that penetration of a prepubescent minor is likely painful and constitutes 'sadistic conduct'). Here, the Court wholly disagrees. First, there is no double-counting even as a theoretical matter: there is an enhancement for sadistic conduct and an enhancement for the age of the victim. It is irrelevant that the very same conduct would not necessarily cause the same physical pain to an older child. Second, even if this argument had merit in some other case, it is baseless here, where there are additional grounds for the sadistic enhancement (e.g., bestiality). The Court, therefore, concludes that this objection is without merit.

### B. No Downward Departure is Appropriate Under the Guidelines

The Court finds that there is no Guidelines-based ground for departure from the 37/I Guidelines range. Indeed, it appears that the Court would have no authority to authorize such a departure even if sought. As Chief Judge Joseph Bataillon of the United States District Court for the

---

[3] Though, as discussed below, the Court does have the authority to disagree with the policy behind the Guidelines enhancement when it determines the appropriate sentence for Sly.

District of Nebraska has ably explained, crimes against children are classified differently than other offenses:

> The court's authority to downwardly depart is controlled by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act").  That Act amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the sentencing Guidelines in sexual offense and child pornography cases. 18 U.S.C. § 3553(b)(2).  In cases involving child crimes and sex offenses, downward departures can only be granted for a mitigating circumstance that has been affirmatively and specifically identified as a permissible ground for departure, that has not adequately been taken into consideration by the Sentencing Commission in formulating the Guidelines, and that should result in a different sentence. U.S.S.G. § 5K2.0(b)(1). The PROTECT Act of 2003 eliminated judicial departures for all reasons except those specifically authorized in Chapter Five, Part K, of the Guidelines Manual.
>
> Also, post-PROTECT Act, downward departures for Aberrant Behavior under U.S.S.G. § 5K2.20, and for diminished capacity under § 5K2.13 are specifically disallowed for child crimes or sexual offenses. Accordingly, in determining a Guidelines sentence, the court is not authorized to grant a downward departure.

*Baird*, 2008 U.S. Dist. LEXIS 2338, at *11-12.  Accordingly, this Court applies no departure under the Guidelines.  The term of imprisonment recommended by the advisory sentencing Guidelines thus remains at between 210 and 262 months.

### C.  Analysis of the § 3353 Factors

The Court must next weigh the seven factors enumerated in § 3553(a) to determine the sentence that is "sufficient, but not greater than necessary," to achieve the sentencing goals outlined in that statute.  *Gall*, 128 S. Ct. at 597 (citing § 3553(a)).  First, the Court is under "a broad command to consider the nature and circumstances of the offense and the history and characteristics of the defendant."  *Id*.  Second, the Court must consider "the general purposes of sentencing."  A sentence imposed by the court must: "(A) … reflect the seriousness of the offense … promote respect for the law … and provide just punishment for the offense."  *Id*.  It must also "(B) … afford adequate deterrence to criminal conduct [and] (C) … protect the public from further crimes of the defendant."  *Id*.  Finally, it must "(D) … provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner."  Third, the Court must

weigh "the kinds of sentences available."  *Id*.  Fourth, the Court must refer to "the Sentencing

Guidelines."  *Id*.  Fifth, the Court should refer "to any relevant policy statement issued by the

Sentencing Commission."  *Id*.  Sixth, the Court must consider "the need to avoid unwarranted sentence

disparities."  *Id*.  Last, the Court must consider "the need to provide restitution to any victim."  *Id*.  As

explained below, the balance of these factors leads this Court to conclude that 11 years and 3 months

is the appropriate sentence "sufficient, but not greater than necessary," to achieve the sentencing goals

outlined in § 3553.

## 1. The Nature and Circumstance of the Offense and the Characteristics of the Defendant

### A.  *The Nature and Circumstance of the Offense*

The Court reiterates its findings that:

possession of child pornography is an exceedingly serious offense, among the most serious class of offenses that do not involve the direct use of violence or coercion on the part of the perpetrator.  *See, e.g.*, *United States v. Holtz*, 285 Fed. Appx. 548, 553 (10th Cir. 2008) ("Possession of child pornography is a serious matter.  It's not just the possessing of it; it's what is done to innocent victims worldwide in order to allow adults to knowingly possess it.").  The Court, accordingly, emphasizes that [the Defendant's] crime is a sexual exploitation offense – criminalizing the possession of child pornography is a necessary complement to laws banning production of such items, much of which occurs outside the jurisdictional reach of the Federal Courts.

Laws criminalizing the possession of child pornography are in place to reduce the market for exploitation of the children that are severely victimized by this crime.  *United States v. Duhon*, 440 F.3d 711, 719 (5th Cir. 2006) ("Possession of child pornography is not a victimless crime.  A child somewhere was used to produce the images downloaded . . ., in large part, because individuals like [the defendant] exist to download the images.") (quoting *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005)).  This crime shocks the conscience: "Children are exploited, molested, and raped for the prurient pleasure of [the defendant] and others who support suppliers of child pornography."  *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007); *see also United States v. Weis*, 487 F.3d 1148, 1153 (8th Cir. 2007) ("[D]efendants guilty of receiving child pornography victimize the children depicted in the pictures.)*; see generally* Professor Audrey Rogers, *Child Pornography's Forgotten Victims*, 28 Pace L. Rev. 847 (2008)  (refuting courts which have implied that child pornography is a victimless crime).  The written word seems inadequate to describe the horrors of this crime.

*United States v. Stern*, 590 F. Supp. 2d 945, 952 (N.D. Ohio 2008).  The Court, however, notes that, similar to the Defendant in *Stern*, Sly "never possessed [child pornography] in order to entice a child . . . never produced any of the images . . . never had any improper conduct with an actual child . . . [and] never molested any child."  *Id*. (internal citations omitted).  So, too, "there is no evidence, direct or indirect, that the defendant ever engaged in the photography of any minors engaged in sexual conduct" or that "the defendant ever engaged in direct or indirect pedophile conduct."  *Id*.  (citations omitted).

The Government correctly notes, however, that at least some aspects of Sly's offense are worse than those of certain other criminals:

> I'd just like the Court to recall some of the descriptions of images and so forth that was set forth in the presentence report that you obviously had looked at earlier, which indicate there was a factual basis for some of those adjustments.  There were 125 different people he traded with.  Never seen that many in a single case before.  It's given a number of leads, and they're going out to prosecute those people for distribution of pornography.  And I think it's significant this is done through an e-mail type of correspondence, so you do have to go out and seek these people, write down what you want, offer things, order things.  It's not where they're just pop-ups that come on his computer or joining a service that provides films of child pornography or lime wire where you sit back and get automatically whether you're present or not, but he's actively involved with the trading, very, very horrible things on the line with at least 125 different individuals that we know happened over a period of years.

(Hrg. Tr. of December 16, 2008 at 18:2-19 (Argument of Assistant US Attorney Robert Becker).)[4]

In sum, the Court finds that defendants such as Sly who have possessed child pornography and traded images with other similar criminals must be punished severely, and that Sly's <u>particular</u> conduct is more reprehensible than many other defendants charged with distribution before this Court.  The Court further finds, however, that those who distribute such images for commercial profit, who

---

[4] Although the Court assuredly factors the extensive nature of Sly's crime into its sentencing determination, it is noteworthy that the Government does not challenge any of Sly's asserted grounds for leniency on their own terms, but merely asks that this court only vary by "a small degree."  (Hrg. Tr. of December 16, 2008 at 18:20-23 (Argument of Assistant US Attorney Robert Becker).)  While the Government did not quantify "a small degree" at the time, the Court does not understand the Government to have voiced any type of opposition to its ultimate decision to vary by the equivalent of two-levels in light of the sexual abuse Sly suffered as a child.

attempt to directly harm children, or who are engaged in the production of this material merit the most severe sentences.[5]

### B. The Characteristics of the Defendant

### i. Sly's Personal History

Sly is a 43-year old single male without any children.  Like a non-trivial segment of the criminals who posses and distribute child pornography, Sly was himself abused as a child.  Sly's baseball coach sexually abused Sly along with other children when Sly was between 8 and 10.[6]  Only a few years prior to that, Sly's father had abandoned Sly after accidentally burning down the family house, leaving Sly, his mother, and siblings destitute and on welfare.  The Court finds that this is a factor the Court can and should consider when sentencing Sly.

### ii. Sly's Post-Arrest Behavior and Psychological Assessment

Sly's conduct since his arrest also weighs in favor of a sentence at the bottom of the sentencing range, even if that conduct does not itself merit a downward variance.  *Cf. United States v. Gleason*, 277 Fed. Appx. 536, 540 (6th Cir. 2008) (quoting with approval a district court that had "certainly departed downward when people have shown extraordinary post-offense or post-conviction

---

[5] Although this Court, on a single occasion, sentenced a defendant to a lesser term of imprisonment for possession of child pornography, the Court at the time emphasized the "extraordinary and unique" circumstances of that case and this Court's consistent record of sentencing defendants at or very near the Government's recommended sentence.  *See Stern*, 590 F. Supp. 2d at 947.

[6] While Sly did not report this abuse at the time, his coach was convicted for abusing other boys and the Government does not dispute the veracity of Sly's report.  As the Court explained during the sentencing hearing:

> While obviously you can't do anything to offer proof with respect to the earlier abuse of the Defendant, I take the Defendant and you at your word with respect to the credibility of those statements.  I believe him when he says it, and I believe you found him to be credible.  And the Government doesn't even seem to be denying that that is a factor that is a fact in this Defendant's background.

(Hrg. Tr. of December 16, 2008 at 19:2-9.)

rehabilitation.").  After his initial arrest, Sly ceased all use of computers and pornography, although

he remained free for a year prior to sentencing.  Sly also sought appropriate psychological treatment.

The Government does not dispute the assessment of Sly's treating therapist:

> It appears that Mr. Sly's viewing, possessing, and distributing child pornography was
> not a manifestation of a sexual interest in children but a combination of (1) The poor
> judgment and increased risk taking characteristic of an addition to Internet
> pornography in general, and (2) The poor judgment and loss of impulse control
> characteristic of chronic alcohol and drug abuse.  There is no history of having
> behaved inappropriately with children or even an interest in spending time with
> children.
>
> It is not clear what role his own sexual victimization played in this.  Mr. Sly does not
> know if there is a relationship and he clearly states that he is not looking at his own
> sexual abuse as an excuse or reason for what he has done. . . .
>
> Mr. Sly suffers from alcoholism and, despite several attempts to receive chemical
> dependency treatment or get into recovery through AA, he has not been successful.
> His drinking exacerbates his depression and anxiety and wrecks [sic] havoc on
> judgment, impulse control, and the ability to refrain from self destructive behaviors.
> Until this is addressed more successfully, he is not a good candidate for
> psychotherapy.  If he can achieve a period of sobriety, I think he would benefit from
> therapy to help him address the sexual abuse in his past.

(July 20, 2008 Report of Candice Risen.)[7]

The Court notes that Sly sought the above therapy well in advance of being charged with any

crime.  (Hrg. Tr. of December 16, 2008 at 19:9-11 (Opinion of the Court) ("I am persuaded that his

rehabilitation conduct does indicate a meaningful and a real desire to change.")).  While "this factor

does not weigh nearly as heav[ily] in [Sly's] favor as it would had he sought treatment prior to his

arrest, the Court nonetheless considers it a positive indication of [Sly's] commitment to refraining

---

[7] The Court reiterates what it said in *Stern*: "[a]lthough the Court notes the positive testimony of Stern's independently financed therapists, the Court weighs this factor only in relationship to other defendants with the financial resources to seek such treatment.  The Court is no more or less inclined to grant [the Defendant's] request for a variance than the Court would be to grant a variance to a defendant who could present only the more limited testimony of court-appointed professionals." *Stern*, 590 F. Supp. 2d at 954 n.9.

from future criminal conduct." *Stern*, 590 F. Supp. 2d at 954; *accord United States v. Polito*, 215 Fed. Appx. 354, 356 (5th Cir. 2007) (per curiam) (finding the same).

### C. The Court's Findings With Respect to § 3553(a)(1)

Evaluating the first of § 3553(a)'s factors, the Court finds that this crime is abominable, but also that Sly's personal circumstances are worthy of some measure of restraint. *Accord United States v. Gardellini*, 545 F.3d 1089, 1095 (D.C. Cir. 2008) ("[T]he district court at sentencing must consider and balance a number of factors – not all of which will point in the same direction."); *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006) ("[T]he district court . . . [emphasized that the sentence was] sufficient enough to reflect the crimes committed while allowing for the possibility that [the defendant] . . . may go on to a productive life in society."). As the Court stated during the sentencing hearing:

> Sly's childhood abuse and post-arrest efforts at rehabilitation] do deserve and warrant some consideration. The problem is in this case that are there several factors that militate against a substantial deviation from these Guidelines. . . .
>
> The fact that this Defendant was an adult at the time that he made the decisions to engage in this conduct – he was an educated adult who had gone many years without giving in to these kinds of temptations. Also weighed against [his personal circumstances] is the scope and the nature of this particular offense. [Assistant US Attorney] Becker [is] right. I've seen a lot of these cases, and this is one of the worst in terms of the nature of the exchange of information, the kind of information that was exchanged, the volume of the exchanges, the number of people that were solicited, and the number of solicitations to which this Defendant responded. So even in the scheme of child pornography cases, which are themselves extremely reprehensible, the nature and circumstances of this offense are particularly heinous.

(Hrg. Tr. of December 16, 2008 at 20: 1-15.)

The Court concludes that Sly's own victimization, his lack of any inappropriate behavior in person with children, and his lack of any apparent desire to engage in inappropriate behavior with children in person, when balanced with the particularly heinous nature of his crime, all weigh in favor of a mild variance. *Cf. Stern*, 590 F. Supp. 2d at 954 (balancing personal characteristics against the extreme seriousness of the offense); *Roberson*, 573 F. Supp. 2d at 1050 (same).

## 2. The Purposes of Sentencing

Federal sentencing law generally asks a court to consider retribution, deterrence, incapacitation, and rehabilitation.  Retribution imposes punishment based on moral culpability, whereas deterrence, incapacitation, and rehabilitation are directed towards society's future security. *United States v. Cole*, No. 5:08-CR-00327, 2008 U.S. Dist. LEXIS 100089, at *12-22 (N.D. Ohio Dec. 12, 2008) (thoughtfully considering the goals of criminal punishment).  Each of these considerations counsels in favor of Sly's sentence.

> ### A. The Sentence Must Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

As this Court has already stated, there is no question that Sly has committed a serious crime. In addition to the conclusions above, the Court again adopts in all respects the findings of its sister district court:

> Trading in child pornography is a very serious offense. The victims are the children themselves who are photographed engaged in conduct that will probably cause them life-long harm and may make still more victims of their eventual offspring. Even though the offending materials are easily available on the internet to persons with sufficient intelligence to put the internet to that use, it is essential that those who view and collect the images be punished and a severe punishment is necessary in the hope that such severe punishment, if well-published by the media, will curtail the use of the internet for that purpose and will eventually reduce the number of child-victims of such action. Thus . . . [this] conduct requires penal sanctions.

*Stern*, 590 F. Supp. 2d at 956) (quoting *Honnold*, No. 5:05-CR-0492, at 6-7); *see also United States v. Duane*, 533 F.3d 441, 452 (6th Cir. 2008) (quoting with approval a district court's recognition that "there is a market for this stuff because people like [the defendant] acquire it, and that market drives victimization of these children.").  Because of people like Sly, there are thousands of:

> children that are involved in these videos and stills who have been victimized and whose lives have been wrecked beyond almost anyone's ability to find redemption. And that is what Congress was concerned about in enacting the penalty provisions for this law.  The idea is if you can dry up the market, then there will not be a need for the product, and perhaps the industry will dry up.... [T]o put [the defendant] on probation, given the offense, would minimize the significance of the offense itself.

14

*Stern*, 590 F. Supp. 2d at 956 (quoting *United States v. Huckins*, 529 F.3d 1312, 1316 (10th Cir. 2008)).  Accordingly, the Court reiterates that the seriousness of the offense weighs heavily in favor of a substantial punishment.

Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake.  *United States v. Cernik*, No. 07 20215, 2008 U.S. Dist. LEXIS 56462, at *25 (E.D. Mich. July 25, 2008) ("[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." (citing *Gall*, 128 S. Ct. at 599)).  There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist.  *See United States v. Zavala*, No. 07 14851, 2008 U.S. App. LEXIS 24168, at *8 9 (11th Cir. Nov. 25, 2008) ("[A]ny higher sentence would promote disrespect for the law." (quoting the district court)); *United States v. Ontiveros*, No. 07-CR-333, 2008 U.S. Dist. LEXIS 58774, at *6 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law].").  Similarly, a just punishment for Sly is one that balances the severity of his crime with the individual characteristics of Sly that counsel in favor of a somewhat lower sentence than that imposed on certain other defendants.

### B. The Sentence Must Afford Adequate Deterrence

Child pornography must be universally condemned, and this Court has noted that "even a defendant with highly compelling personal characteristics should not be fully excused from such a heinous crime."  *Stern*, 590 F. Supp. 2d at 957; *accord United States v. Phinazee*, 515 F.3d 511, 516 (6th Cir. 2008) ("[G]eneral deterrence is an acceptable basis for sentencing." (citation omitted)); *United States v. McIlrath*, 512 F.3d 421, 423 (7th Cir. 2008) (Posner, J.) ("[W]e as a society have

found, unfortunately, no better way to deal with this serious, serious problem other than to incapacitate or remove individuals from the community for a period of time not only as a form of punishment but a form of deterrence not only to you personally but deterrence to others who may find themselves similarly situated." (quoting the district court)); *but see Goldberg*, 2008 U.S. Dist. LEXIS 35723, at *15 ("Importantly, much of the market [for child pornography] is driven by compulsive behavior and caused by deviance; whether such behavior can be deterred is doubtful.").  That said, the sentence contemplated by the Guidelines is somewhat greater than necessary to achieve this purpose, in this case, even if not substantially so.  *Accord United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008) (en banc) (affirming a district court's finding that a below guidelines sentence could "afford adequate deterrence to others."); *cf. United States v. Desmond*, No. 05-CR-792 4, 2008 U.S. Dist. LEXIS 19602, at *9-10 (N.D. Ill. Mar. 11, 2008) (noting that a below guidelines sentence may in some cases provide more deterrence); *cf. also Gardellini*, 545 F.3d at 1095 ("[T]he Government's argument based on deterrence alone is flawed because it elevates one § 3553(a) factor B deterrence B above all others.").

The Court is mindful that individual factors unique to Sly somewhat limit the specific deterrent value of any sentence.  In this regard, the Court leans heavily on its finding that Sly himself was abused as a child.  A criminal sentence can hardly deter an abuse victim from suffering that abuse, although the Court emphasizes that this is a <u>mild</u> departure – Sly's own abuse, though worthy of some consideration, certainly does not fully mitigate this crime.  Still, "[t]he value of any longer sentence as a deterrent . . . would be marginal."  *Stern*, 590 F. Supp. 2d at 958 (quoting *Baird*, 2008 U.S. Dist. LEXIS 2338, at *20).

### C.  The Sentence Must Protect the Public from Further Crimes of the Defendant

Sly is 42 years of age.  He will be 53 when he is released from prison and he will be subject to extreme restrictions on his activities, including computer use, until at least his 63rd birthday, if not longer.  There has been no suggestion from the Government that this defendant need be incapacitated

beyond this point.  While the Court is mindful that those who have engaged in this criminal behavior in the past are always susceptible to it in the future, on this record, additional incapacitation is not warranted.

> *D. The Sentence Must Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.*

There can be no question that this Defendant is in need of psychological treatment for alcohol abuse in addition to his use of child pornography.  There is, however, no reason to believe that a sentence greater than the Court has imposed is necessary for such treatment.

### 3. The Kinds of Sentences Available

In addition to imprisonment, half-way homes, home detention, community detention, and various forms of community service have all been weighed by this Court.  The Court finds that, given the extreme nature of the defendant's crime, it must order a substantial term of imprisonment.  The Court does believe that future restrictions on the defendant's behavior (i.e., monitoring of his personal internet use and psychological evaluations) reduce the need for an even longer prison sentence in this case.  Still, the Court believes that the broad publication that those who possess child pornography will be imprisoned can help reduce demand for child pornography and ultimately protect children in a way that a less extreme sentence simply cannot.

### 4. The Sentencing Guidelines

The Court "consults" and "takes into account" the Guidelines with reference to their original goals.  The Guidelines were "developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment."  *Baird*, 2008 U.S. Dist. LEXIS 2338, at *15-16 (citing the United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004)).  The Guidelines were carefully developed – the Commission employed a data-driven and empirical focus

designed to reduce recidivism.  *See id*.  Because of the Guidelines focus on data, they frequently "represent a reasonable estimation of a fair sentencing range."  *Id*. at 16.

Sentencing for the exploitation of children under the Gridlines is quite different than sentencing for other offenses.  In part out of a concern born of the almost unthinkable nature of these crimes, "the Commission departed from past practices in setting offense levels for . . . child crimes and sexual offenses."  *Id*. at 17 (citing *Kimbrough*, 128 S. Ct. at 567).  Consequently, the Guideline ranges of imprisonment for possession of child pornography is a "less reliable appraisal of a fair sentence."  *Id*.  (citing *Kimbrough*, 128 S. Ct. at 574); *see also, e.g., United States v. Noxon*, No. 07-40152, 2008 U.S. Dist. LEXIS 87477, at *5-6 (D. Kan. Oct. 28, 2008) (same); *United States v. Grinbergs*, No.05-CR-232, 2008 U.S. Dist. LEXIS 91712, at *19-20 (D. Neb. Sept. 8, 2008) (same); *Ontiveros*, 2008 U.S. Dist. LEXIS 58774, at *13-14 (same); *United States v. Hans*on, 561 F. Supp. 2d 1004, 1011 (E.D. Wis. 2008) (same); *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008) (same); *United States v. Malone*, No. 04-80903, 2008 U.S. Dist. LEXIS 13648, at *8-9 (E.D. Mich. Feb. 22, 2008) (same).  One Court put it simply – in many cases the Guidelines recommendations for cases involving child pornography are "illogical."  *Hanson*, 561 F. Supp. 2d at 1011 (citation omitted); *see also Grossman* 513 F.3d at 594 ("After acknowledging that the probation department 'correctly' calculated the guidelines range, the sentencing judge noted that he was 'troubled' and 'shocked by the enhancements.  In his view, the guidelines produced a calculation that was 'not fair.' . . . [he felt that the guidelines break] 'out an offense into very tiny increments that almost repeat one another.'").

The Court is troubled that the Guidelines for sentencing those who possess child pornography "have been repeatedly raised despite evidence and recommendations by the [United States Sentencing] Commission to the contrary."  *Hanson*, 561 F. Supp. 2d at 1009 (citation omitted); *Grinbergs*, 2008 U.S. Dist. LEXIS 91712, at *19-20.  Indeed, "[t]he most recent changes [to the Guidelines] apparently came from two lawyers in the Justice Department who persuaded a novice Congressman to add them

18

to the popular Amber Alert bill." *Hanson*, 561 F. Supp. 2d at 1009 (citation omitted).  For the above reasons, and for the reasons fully set forth in *Hanson* and *Baird*, this Court concludes that "the guideline provisions relating to child pornography offenses of this nature do not reflect the kind of empirical data, national experience, and independent expertise that are characteristic of the Commission's institutional role."  *Ontiveros*, 2008 U.S. Dist. LEXIS 58774, at *20.  As indicated above, the Court specifically disagrees with the policy of a two-level enhancement for use of a computer when that computer was not used to actually contact minors.  *Cf. Grossman* 513 F.3d at 594 (acknowledging the appropriateness of then-Chief Judge Bell's departure from the Guidelines because of their duplicative nature).

The Court has weighed the sentence suggested by the Guidelines in light of the facts of this particular case and concluded that a total reduction equivalent to four-levels (from 37 to 33) is appropriate for Sly.  As explained above, a portion of this reduction represents a policy disagreement with the "computer enhancement" in cases such as Sly's and a portion represents a reduction for Sly's personal circumstances, particularly the sexual abuse Sly suffered as a child.

### 5. Any Pertinent Policy Statement

There does not appear to be any such statement.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

The Court again emphasizes the broad disparity in sentences involving child pornography:

The Court has carefully considered an extremely wide variety of opinions from across the country as well as the National Guideline Statistics.  *See United States v. Newell*, 35 Fed. Appx. 144, 145 (6th Cir. 2002) ("[The Guidelines are intended] to eliminate unwarranted sentence disparities nationwide.").  The Court is deeply troubled by its findings: "anyone seriously concerned about federal sentencing disparities [must begin by] taking a very close look at federal child porn cases."  Professor Douglas A. Berman, Is There an Ivy-Leaguer Exception to Federal Child Porn Charges? (October 22, 2008), on-line at http://sentencing.typepad.com.  Based on the Court's review of the case law, it is clear that "one would be hard pressed to find a consistent set of principles to explain exactly why some federal child porn defendants face decades in federal prison, some face many years in federal prison, while others only end up facing months."  *Id*.  This Court is "struck by the inconsistency in the way apparently

similar cases are charged and sentenced."  *Goldberg*, 2008 U.S. Dist. LEXIS 35723, at *5-6 (considering nearly two-dozen cases).

In short, the national sentencing landscape presents a picture of injustice. In the absence of coherent and defensible Guidelines, district courts are left without a meaningful baseline from which they can apply sentencing principles.  The resulting vacuum has created a sentencing procedure that sometimes can appear to reflect the policy views of a given court rather than the application of a coherent set of principles to an individual situation.  Individual criminal sentences are not the proper forum for an expansive dialogue about the principles of criminal justice.  Such conversation, though vital, should not take place here – lives are altered each and every time a district court issues a sentence: this is not a theoretical exercise.  Yet, this Court is mindful of the appropriate scope of its authority – it must take the law as it finds it.

*Stern*, 590 F. Supp. 2d at 961.

This Court acknowledges the reality that, even when deviating substantially from the Guidelines, this Court deviates less than some others in these types of cases.  *See, e.g.*, *United States v. Nazerzadeh*, 280 Fed. Appx. 432, 433 (5th Cir. 2008) ("Nima Nazerzadeh pled guilty to possession and distribution of child pornography, crimes that made him eligible under the Sentencing Guidelines for a sentence of 210 to 262 months.  The district court instead sentenced Nazerzadeh to the statutory minimum of five years. . . .); *but see, e.g., United States v. Williams*, 294 Fed. Appx. 336, -- (9th Cir. 2008) ("David Allen Williams pled guilty to distribution, receipt, and possession of child pornography.  He was sentenced to 300 months incarceration for these offenses.").  Ultimately, the Court concludes that a sentence of 135 months of custody, representing a low-end sentence after a four-level variance from that recommended by the Guidelines, is not unreasonable, despite wide variations between sentencing courts that consider this crime.  This sentence is meaningfully less than the 30 year sentence for actual creation of child pornography, yet more substantial than that given to compelling defendants whose offenses are less heinous, *see Stern,* 590 F. Supp. 2d at 962-63 (collecting cases).

**7. The Need to Provide Restitution to any Victims of the Offense**

It is obviously not possible for Sly to provide restitution to his particular victims.  Much of the *concept* of restitution, however, is still a factor in this case.  The Court believes that Sly should make "restitution" in the form of community service to those who have suffered from similar crimes. To that end, Stern must complete a very substantial term of community service, preferably assisting battered adult women in a program approved and supervised by the probation office who will be overseeing his lengthy term of supervised release.

**IV.    CONCLUSION**

Sly has committed a serious crime and the Court finds it necessary to impose a substantial term of imprisonment on him.  Nevertheless, considering the factors under § 3553(a), the Court sentences  Sly to a term of 135 months of custody, followed by an eight year term of supervised release.  The Court determines, for all the reasons articulated in this order, as well as those set forth on the record of the sentencing proceeding in this matter, that this sentence represents that sentence which is no more than reasonable necessary to take into account all the sentencing factors this Court must consider under 18 U.S.C. § 3553(a).

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: August 27, 2009**

21